OPINION
{¶ 1} Defendant-appellant Jimmy Lee Newell appeals his conviction and sentence entered in the Stark County Court of Common Pleas on one count of burglary and one count of cocaine possession.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 3} Dawn Miller lives in a duplex at 1232 Nelson N.E., Canton, with her two children. Miller's boyfriend Justin Ove occasionally spends the night at the residence as well, but does not live there full-time. Neither Miller nor Ove know appellant Jimmy Lee Newell.
 {¶ 4} On March 22, 2005, around 5:00 p.m., Miller suffered an asthma attack and was transported to Mercy Medical Center by ambulance, where she remained hospitalized for 24 hours. In the meantime, her ex-husband picked up her children and took them to his residence to spend the night. Ove was at work when Miller was taken to the hospital, and was unaware of what had happened. He returned to the duplex around 10:00 p.m. and was disturbed to discover that Miller was not home, with no explanation. Eventually, Ove's sister located Miller at Mercy Medical Center, and Ove went to the hospital to visit her. He was turned away by hospital staff, and returned to the duplex by taxicab around 3:15 a.m.
 {¶ 5} When the cab dropped him off, Ove paid the cab the driver from the couple's stash of money which was kept in an MM's candy tin on the top shelf of the closet. After paying for the cab ride, their savings amounted to $270.00 in cash. Ove replaced the tin on the closet shelf after paying for the cab.
 {¶ 6} The next morning, Miller's ex-husband returned the children, and Ove helped to get them off to school. As he prepared to leave the house for the hospital, a man appeared at the door.
 {¶ 7} The man asked Ove whether he wanted to buy a Bible for a worthy cause. Ove refused, and told the man that his girlfriend was in bad shape in the hospital and that he was on his way to go visit her. Ove did not let the man into the duplex or buy any Bibles from him, and the man left.
 {¶ 8} Ove then left the duplex around 10:00 a.m. to visit Miller in the hospital. After the visit, Ove went directly to his mother's house and on to work his shift at Peter Shear's restaurant at 4:00 p.m. He did not return to the duplex after the hospital visit.
 {¶ 9} Miller was discharged from the hospital around 5:00 p.m. and returned to the duplex. When she came in, she discovered the living room in a shambles. Medicine, papers, and clothing were scattered around. At that time Miller noticed that the MM's candy tin was in the middle of the living room floor, empty. The $270.00 in cash was gone. Miller eventually discovered that a Play Station 2 and her cell phone were missing as well. She called the Canton Police Department to report the break-in.
 {¶ 10} Miller also called Ove at Peter Shear's and told him what happened. Ove's boss let him leave work and gave him a ride to the duplex. Ove noticed as he approached the duplex that a basement window had been kicked in from the outside, and speculated that this was how the burglar had entered the residence.
 {¶ 11} Patrolmen Sedares and Guthrie of the Canton Police Department were dispatched to investigate the break-in. They noted the broken basement window, and concurred that this was probably the burglar's point of entry. Sedares collected the empty MM's candy tin and tagged it into evidence. He later submitted the tin to the department's I.D. Bureau to be dusted for fingerprints.
 {¶ 12} Det. Weirich of the I.D. Bureau dusted the tin for prints and developed a latent fingerprint from the surface of the tin. He lifted the print with the use of microsil putty, and submitted the print to the Stark County Crime Lab.
 {¶ 13} Sgt. Croston was assigned to investigate the case of the burglary. Croston received a report from the Stark County Crime Lab which revealed that the latent print on the MM's tin belonged to Appellant Jimmy Lee Newell. Croston spoke with Miller and Ove, who told him that they did not know Newell. Croston also attempted to speak to Newell to get his side of the story, and obtained a search warrant for a known fingerprint from Newell to use for comparison purposes. Croston also created a photo line-up which contained Newell's photo. Miller was not able to pick anyone from the photo line-up. Ove, however, identified Newell as the man who came to his door attempting to sell Bibles on the day of the burglary.
 {¶ 14} Croston never did obtain Newell's side of the story. Despite promises by Newell to come to the police department to discuss the incident, Newell never showed up, and Croston eventually sought a warrant for his arrest.
 {¶ 15} On May 27, 2005, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(3), and one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(A).
 {¶ 16} The State of Ohio filed a motion to bifurcate the charges. Such motion was granted and individual trials commenced.
 {¶ 17} The trial on the burglary charge commenced on August 17, 2005.
 {¶ 18} Both Miller and Ove testified that they did not know Appellant and that they did not give him permission to enter Miller's home. (T. at 170-171, 223).
 {¶ 19} Patrolman Sedares testified that the point of entry into the Miller home was determined to be the kicked-in basement window. (T. at 220, 227-228, 236).
 {¶ 20} Criminalist Dennis Florea of the Stark County Crime Lab testified as to the method by which Newell's fingerprint was discovered on the MM's tin. Florea explained that fingerprints provide a positive means to identify a subject because no two individuals have the same ridge pattern on their prints. Florea's area of expertise is comparing latent fingerprints (those that are found on an object, developed, and lifted) to known fingerprints of an individual. Florea also utilizes APIS (Automated Fingerprint Identification System), which stores imaged fingerprint impressions. The APIS system provides the criminalist with a candidate for a potential match, and then the criminalist must manually compare the latent print to the individual's known print.
 {¶ 21} Florea testified that in this case, two latent fingerprints of value were lifted from the MM's tin, and entered into AFIS, which provided Newell as the candidate for the source of the prints. Florea then manually compared the known print on Newell's fingerprint card to the latent print lifted from the tin and determined that they matched. Newell's right ring finger created the fingerprint on the tin, to a reasonable degree of scientific certainty.
 {¶ 22} Newell himself was the sole defense witness. He stated that he is an admitted crack cocaine addict and dealer. He claimed that he was driving his car on 7th Street, N.E., Canton, when he was approached by a friend, Latrevia Carlton. Carlton asked Newell for a "fifty," or $50 worth of crack cocaine, and Newell provided it. Carlton asked Newell to give her a ride, along with her friend. Justin Ove, Carlton's friend, got into the backseat of Newell's car. The trio allegedly drove to the duplex, where Ove invited Newell and Carlton in to smoke crack cocaine. Newell stated that Ove bought an additional $100 worth of crack cocaine once they were inside the house, and that Ove said his girlfriend was at the hospital giving birth to his baby. Ove allegedly stated that his girlfriend disapproved of his crack habit and would throw him out of the house if she knew he was using. Ove asked for Newell's help in selling the Play Station 2 to replace some of the money that he had spent on crack cocaine. Newell alleged that Miller came home in the midst of the drug binge, and that he hid in the basement and eventually left through the basement window so that Miller would not know that he had been there, dealing and smoking crack.
 {¶ 23} Newell denied stealing Miller's cell phone and insisted that he had never touched the MM's tin, denying that he had ever seen it before the trial. He claimed that Ove let him into the house voluntarily and gave him the Play Station 2. Newell also admitted to a lengthy criminal history of cocaine trafficking and possession, but claimed that he does not steal to support his habit.
 {¶ 24} At the close of the State's case and again at the conclusion of all of the evidence, Appellant moved for acquittal. The trial court denied said motions.
 {¶ 25} After deliberations, the jury found appellant guilty on the burglary charge. At that time, Appellant expressed his desire to change his plea of not guilty to the possession of cocaine charge to one of guilty. The trial court deferred sentencing to August 19, 2005, at which time it accepted Appellant's guilty plea and sentenced Appellant on both charges. The trial court imposed a four (4) year prison term for the burglary conviction, and a one year sentence on the possession of cocaine charge. The trial court ordered the sentences be served consecutively.
 {¶ 26} Appellant now appeals, assigning the following as error:
 ASSIGNMENTS OF ERROR {¶ 27} "I. APPELLANT'S CONVICTION FOR ONE COUNT OF BURGLARY WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 28} "II. APPELLANT CONTENDS THAT THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO A FOUR YEAR PRISON SENTENCE, ONE YEAR LESS THAN THE MAXIMUM, WITHOUT CONSIDERING ALL THE STATUTORY CRITERIA NOR MAKING THE REQUISITE FINDINGS."
 I. {¶ 29} In the first assignment of error, appellant maintains his conviction on the burglary charge is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 30} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 31} Appellant was convicted of burglary in violation of R.C. 2911.12(A)(3):
 {¶ 32} In the indictment in the case at bar, appellant was charged with Burglary in violation of R.C. 2911.12(A)(3), which states:
 {¶ 33} "A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 34} "* * *
 {¶ 35} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 36} Appellant asserts that the State of Ohio failed to prove beyond a reasonable doubt that he trespassed in the residence of Dawn Miller, arguing instead that he was invited in by Ove.
 {¶ 37} Appellant further argues that Ove's testimony was not credible because he had a prior theft conviction.
 {¶ 38} Appellant's version of events could not explain the broken basement window.
 {¶ 39} Upon review, we find that in the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the facts noted supra, we find there was sufficient, competent evidence to support appellant's conviction on the burglary charge, and the same was not against the manifest weight or sufficiency of the evidence.
 {¶ 40} Appellant's first assignment of error is overruled.
 II. {¶ 41} In the second assignment of error, appellant asserts the trial court erred in imposing one year less than the maximum prison term for the burglary charge.
 {¶ 42} Subsequent to the filing of the briefs in this matter, the Supreme Court of Ohio issued its decision in State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856. Pertinent to this appeal, the Foster court held R.C. 2929.14(B) and (C), R.C.2929.19(B)(2), R.C. 2929.14(E)(4) and R.C. 2929.41(A), requiring "judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant" and/or consecutive sentences violates the principles announced by the United States Supreme Court inBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2nd 403 and is therefore unconstitutional. Id. at ¶ 83. The Foster court severed the statutes, and concluded
 {¶ 43} "* * * trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 44} Accordingly, Blakely applies to Ohio's sentencing guidelines, and in accordance with the directives of the Foster
court, we grant this assignment of error and vacate the sentence herein. The matter is remanded to the trial court for re-sentencing pursuant to Foster.
 {¶ 45} We affirm appellant's conviction in the Stark County Court of Common Pleas, and we reverse and remand the matter as to appellant's sentence in accordance with the law and this opinion.
By: Boggins, J., Sheila G. Farmer, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, we affirm appellant's conviction in the Stark County Court of Common Pleas, and we reverse appellant's sentence. We remand the matter to the trial court for re-sentencing in accordance with the law and our opinion. Costs to be divided equally.